# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   **v.**                                          **Case No. 09-CR-249**

**JOSHUA D. FERRELL**
        **Defendant.**

## DECISION AND ORDER

Police officers assigned to a high crime area task force observed a truck double parked, with a man leaning in the passenger side window. Suspecting a possible drug transaction, the officers approached to investigate, observed open beer cans inside the truck, and asked the driver, later identified as defendant Joshua Ferrrell, to exit. Defendant failed to comply with the officers' commands to show his hands, reaching towards a bulge in his pocket. The officers conducted a pat-down, discovering a firearm. A subsequent search of defendant's person turned up corner cuts of crack cocaine.

The government charged defendant with possession of a firearm as a felon, 18 U.S.C. § 922(g)(1), possession of crack cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c). Defendant filed a motion to suppress, challenging the legality of the initial stop. The magistrate judge handling pre-trial proceedings in this case concluded that the officers had probable cause to stop defendant for double parking and thus denied defendant's request for an evidentiary hearing and recommended that the motion be denied.

After defendant's counsel withdrew, I extended the time for filing objections to the

recommendation. I then permitted successor counsel to file an amended motion to suppress adding a challenge to the search of defendant's person. I referred the case back to the magistrate judge, who held an evidentiary hearing on the amended motion but again recommended denial. Defendant objects to the recommendations, requiring me to review the matter de novo. Fed. R. Crim. P. 59(b)(3). De novo review does not require a de novo evidentiary hearing, even when witness credibility is at issue. See United States v. Raddatz, 447 U.S. 667, 673-76 (1980). Neither side requests a new hearing, and I find the record made before the magistrate judge sufficient for my review.

## I. FACTS

City of Milwaukee police officer David Bettin testified that on the evening of July 28, 2009, he and his partners, officers John Schott and Fawn Gabrielson, were patrolling in the area of North 24th Place. The officers were members of a Neighborhood Task Force Street Crimes Unit, which deployed in areas of high crime based on crime statistics collected by the department.

As the officers drove east on West Chambers Street in the 2400 block, Bettin observed a truck parked in the middle of the road obstructing northbound traffic in the 3000 block of 24th Place. Another individual stood outside the vehicle, leaning in through the passenger side window; the doors of the vehicle were closed. Based on his training and experience, Bettin suspected a drug transaction and alerted the driver of the squad, Schott, of his observations.

Schott turned around and, using the southbound driving and parking lane, drove around the truck, stopping the squad car in front of the truck. The officers traveled at a normal rate of speed, and their emergency lights were not activated. About a minute passed between Bettin's first observation of the truck to when the officers pulled over, and the individual was still leaning

2

into the vehicle through the passenger side window when the officers arrived. The officers exited their squad to make contact with the individuals in the truck. Another squad, which was teamed up with Bettin's crew as part of the Street Crimes Unit, arrived at the scene and parked behind the truck.

Bettin testified that the officers did not draw their weapons and approached the vehicle by simply walking up to it. Bettin informed the driver, later identified as defendant, the reason why the police were stopping him – for parking in the street. Bettin testified that he immediately spotted open alcohol containers in the vehicle, smelled alcohol, and observed that defendant's eyes were glassy and blood shot. Bettin asked defendant to get out of the vehicle and told defendant to keep his hands where he could see them. Defendant asked why he was being told to get out of his vehicle, and Bettin again smelled alcohol on his breath and again asked him to exit. Defendant stepped out but immediately started reaching towards a bulge on the right side of his shorts with his right hand. Bettin told defendant to put his hands up; defendant briefly complied but immediately put his hand back down to this bulge. Bettin patted the bulge and felt an object consistent with a gun. Bettin called for Schott and with Schott's assistance handcuffed defendant, allowing Bettin to recover a firearm from defendant's right front shorts pocket.

Bettin secured the firearm because he was concerned about the two individuals in the rear of defendant's vehicle and the person standing outside the front passenger side. Schott continued to search defendant, recovering crack cocaine. Officers also recovered two open cans of beer from the truck's center console.

Schott corroborated Bettin's account, testifying that on the evening of July 28, 2009, as they passed North 24th Place while driving east on Chambers, Bettin alerted him to a vehicle

3

blocking traffic. Schott turned around on Chambers, turned north on North 24th, drove at a normal rate of speed and without the squad's emergency lights on around the truck by going into the oncoming traffic lane, then parked in front of the truck. The officers approached the truck with firearms holstered, Bettin contacting the driver and Schott the rear driver's side passenger. Schott requested the passenger to exit, at which time he smelled the odor of fresh marijuana. As Schott spoke with the passenger, Bettin called him over, indicated that defendant had a gun, and Schott assisted Bettin in handcuffing defendant. As Bettin secured the firearm, Schott searched defendant, recovering fourteen corner cuts of crack cocaine from defendant's right front pants pocket.

Defendant testified that he was dropping off a friend at a house in the area of 24th Place and Burleigh. He stated that he parked in the northbound lane next to a car that was parked by the sidewalk. The friend got out of his vehicle and was speaking to defendant through the passenger side window when defendant saw a car coming up so fast behind him that he was afraid the vehicle was going to hit him. The speeding car swerved in front of defendant and stopped, at which point defendant recognized that it was a police car. Defendant testified that the officers rushed out of the squad car, with Bettin pointing his gun at defendant. The officers repeatedly yelled "hands!" as they surrounded the vehicle, and Bettin ran up to defendant's door, opened the door, and defendant got out in response. Bettin immediately put defendant in handcuffs and started going through his pockets. Defendant claimed that he had no conversation with the officers before he exited his truck, and that he made no movements towards his right hip.

## II.  DISCUSSION

Defendant challenges both the stop and the search of his person.  I agree with the magistrate judge that the officers acted lawfully in both instances.

**A.    The Stop**

The police had probable cause to "stop" defendant for double parking.[1]  Under Wis. Stat. § 346.54(1)(d), "a vehicle shall be parked facing in the direction of traffic with the right wheels within 12 inches of the curb or edge of the street when parked on the right side and with the left wheels within 12 inches of the curb or edge of the street when parked on the left side."  It is undisputed that at the time officers approached defendant, he was parked more than a car width from the curb, in the northbound lane of travel.

Defendant argues that he was not actually "parked," as that term is defined in Wisconsin law, but rather temporarily stopped to unload his friend.  See Wis. Stat. § 340.01(42m) ("'Park' or 'parking' means the halting of a vehicle, whether occupied or not, except temporarily for the purpose of and while actually engaged in loading or unloading property or passengers.").  The facts do not support his assertion.  Defendant stopped in the lane of travel for at least a minute, longer than it would ordinarily take to drop off a passenger, and the officers observed no one exiting or entering the truck.

---

[1]Even though defendant had already stopped and parked his vehicle before the officers arrived, I will assume, arguendo, that the initial encounter in this case constituted a seizure. Cf. United States v. Clements, 522 F.3d 790, 794-95 (7th Cir.) (holding that officers did not effect a seizure by approaching an already parked car), cert. denied, 129 S. Ct. 130 (2008); United States v. Espinoza, 490 F.3d 41, 48 (1st Cir. 2007) (explaining that the Fourth Amendment permits an officer to approach a parked vehicle without any show of force and question the occupants).  The presence of squad cars both in front of and behind defendant's truck likely impeded his ability to leave.  Cf. United States v. Hendricks, 319 F.3d 993, 1001 (7th Cir. 2003) (holding that officer's parking of car fifteen feet behind suspect's did not block suspect's exit and did not make encounter a seizure).

5

In any event, the issue is not whether the government has proven a violation of § 346.54(1)(d) but whether the officers had probable cause to believe defendant was violating that provision. Probable cause is not proof beyond a reasonable doubt or even by a preponderance of evidence, e.g., Braun v. Baldwin, 346 F.3d 761, 766 (7th Cir. 2003), and the mere existence of an innocent explanation does not negate probable cause, e.g., United States v. Reed, 443 F.3d 600, 604 (7th Cir. 2006). Defendant argues that § 340.01(42m) required the officers to discount the possibility that he was dropping off a passenger, but he cites no authority for that contention, and I see no reason why this statute should impose some unique burden on the police.

I also conclude that under the totality of the circumstances here the officers had reasonable suspicion to approach defendant's truck to investigate the possibility of drug activity. See, e.g., United States v. Oglesby, 597 F.3d 891, 894 (7th Cir. 2010) (explaining that the police may conduct an investigatory stop based on specific and articulable facts giving rise to a reasonable suspicion of criminal activity). The encounter occurred at night, in an area known for high crime. See id. (upholding stop "in a location that was known to the officers to be a high-crime area plagued by drug trafficking and gun violence"). Bettin observed a vehicle parked in the street, with another man leaning in the passenger window, and based on his training and experience reasonably suspected a drug transaction. See, e.g., United States v. Lopez-Garcia, 565 F.3d 1306, 1313-14 (11th Cir.) (finding that officer had reasonable suspicion for a stop where the defendant's vehicle was stopped in the roadway, in a high-crime area known for street-level, hand-to-hand drug transactions, and an unknown person was seen leaning into the window and having a conversation with the defendant), cert. denied, 130 S. Ct. 1012 (2009); see also Oglesby, 597 F.3d at 894 ("Police officers are permitted to rely on their

6

experience and training in forming a reasonable suspicion."). These circumstances provided justification to at least approach defendant's truck to dispel the officers' suspicions.

**B.    The Search**

The government argues that the officers were permitted to arrest and search defendant pursuant to the parking violation. See Atwater v. City of Lago Vista, 532 U.S. 318 (2001) (holding that Fourth Amendment did not forbid an arrest for a minor traffic violation punishable only by a fine). Like the magistrate judge, I hesitate to endorse the notion that officers may conduct a full custodial arrest and search of a driver pursuant to the issuance of a parking citation. In any event, Bettin did not arrest defendant for the parking violation; instead, based on his further observations, Bettin obtained ample justification to order defendant out of the truck and pat him down, discovering the firearm leading to defendant's arrest. See United States v. Garcia, 376 F.3d 648, 650 (7th Cir. 2004) ("[T]he reasonableness of a search or seizure depends on what actually happens rather than what could have happened.").

Upon approaching the truck, Bettin observed open intoxicants in the console area, a violation of Wisconsin law. See Wis. Stat. § 346.935(2). He also smelled alcohol on defendant's breath and observed defendant to have blood shot, glassy eyes and a nervous demeanor. These observations provided more than sufficient grounds to order defendant out of the truck. See State v. Pallone, 228 Wis. 2d 272, 277 (Ct. App. 1999) (upholding warrantless arrest for possession of open intoxicants), aff'd, 236 Wis. 2d 162 (2000); see also Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) (holding that "that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures").

7

Defendant failed to comply with Bettin's first request to exit; once he did so, he failed to comply with Bettin's command to show his hands and repeatedly reached towards a bulge in his pocket. Coupled with the other circumstances – night-time, high crime area, suspected drug activity – these movements provided reasonable grounds for Bettin to conduct a pat-down for weapons for officer safety. See, e.g., United States v. Thomas, 512 F.3d 383, 388 (7th Cir. 2008) (upholding pat-down where drug suspect reached in and out of his jacket pocket, a movement that could be interpreted by an officer as a retrieval of a weapon); United States v. Ellis, 501 F.3d 958, 962 (8th Cir. 2007) (upholding pat-down where officers, conducting a drug investigation, observed suspect act nervously and reach toward his pocket); United States v. Brown, 273 F.3d 747, 748-49 (7th Cir. 2001) (upholding pat-down made following night-time stop in high crime area, where the defendant made a quick move on exiting the car). Bettin's discovery of the firearm provided probable cause to arrest defendant for carrying a concealed weapon, see Wis. Stat. § 941.23, justifying the further search pursuant to which Schott discovered the drugs, see Michigan v. DeFillippo, 443 U.S. 31, 35 (1979) (holding that an arresting officer may, without a warrant, search a person validly arrested, regardless of whether there is any indication that the person arrested possesses weapons or evidence).

Defendant argues that – based on his version of events – the officers could not have made the additional observations of open intoxicants and furtive movements before arresting and searching him. The magistrate judge implicitly adopted the officers' version over defendant's, and I now do so explicitly. The officers, despite being sequestered, testified clearly and consistently with one another as to the circumstances of the stop. Defendant points to no contradictions or inconsistencies between their testimony and the other evidence of record, and I see none. I cannot accept defendant's contention, made before the magistrate

8

judge, that given the nature of their assignment the officers were more likely to approach in the hostile manner he described. As the officers described it, this encounter was entirely consistent with the investigation of a possible drug transaction. It was not until defendant disobeyed Bettin's commands and reached for the bulge in his pocket that the situation became obviously dangerous. Finally, defendant, who has several prior felony convictions on his record and faces a significant prison sentence if convicted in this case, had an incentive to shade the truth, and he presented no corroboration for his version of events.[2]

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendations are adopted, and defendant's motions to suppress are **DENIED**.

Dated at Milwaukee, Wisconsin, this 22nd day of April, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[2] Defendant asked the magistrate judge to continue the hearing so he could track down the others present at the time of the stop. The magistrate judge denied the request without prejudice, pending a review of the parties' post-hearing submissions. Defendant did not revisit the issue in his post-hearing briefs, nor does he mention it in his objections. I therefore consider it waived. See Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999) (holding that if a party objects to only some parts of the magistrate judge's report, he waives review of the issues to which he has not objected).